## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JAMES NIXON, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-01103** |
| | ) | **Judge Aleta A. Trauger** |
| **BEVINI, S.R.L. and SACMI IMOLA S.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court are the following motions: (1) defendant Bevini, S.r.l.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 38); (2) defendant Bevini, S.r.l.'s Motion to Dismiss [co-defendant] Sacmi Imola S.C.'s Crossclaim for Lack of Personal Jurisdiction (Doc. No. 43); and (3) plaintiff James Nixon, III's Motion to Stay Adjudication of Bevini, S.r.l.'s Rule 12(b)(2) Motion to Dismiss and to Allow the Parties to Conduct Discovery Relating to Personal Jurisdiction (Doc. No. 48).

Because the court finds, as set forth herein, that the plaintiff has not established a *prima facie* basis for the exercise of personal jurisdiction over the defendant, the court will grant both of Bevini's Motions to Dismiss. Because there are no material factual disputes and discovery would be futile, the court will deny the plaintiff's Motion to Stay.

## I.      FACTS AND PROCEDURAL HISTORY

James Nixon initiated this lawsuit on December 23, 2020 by filing suit against Bevini S.r.l. ("Bevini") only. He filed the Amended Complaint (Doc. No. 13) on March 11, 2021, adding Sacmi Imola S.C. ("Sacmi") as a defendant.

As set forth in the Amended Complaint, Nixon is a citizen and resident of Dickson, Dickson County, Tennessee and was formerly employed by non-party Dal-Tile Corporation ("Dal-Tile") in Dickson. Both Bevini and Sacmi are Italian corporations with their principal places of business in Italy. (Doc. No. 13 ¶¶ 1, 2, 4.) Neither Bevini nor Sacmi is authorized to do business in Tennessee.

At all relevant times, Bevini was in the business of designing, manufacturing, assembling, and selling machinery, including the Bevini, S.r.l. Hopper, Model TRM, Serial Number 31615M03 ("Hopper") that is the subject of this lawsuit. (*Id.* ¶ 9.) Sacmi, at all relevant times, was in the business of "supplying, distributing, assembling, and/or selling machinery such as the Hopper to businesses in the United States, including Dal-Tile Corporation." (*Id.* ¶ 10.) In other words, Dal-Tile purchased the Hopper from Sacmi. More specifically, in October 2014, Dal-Tile entered into an agreement with Sacmi, pursuant to which Sacmi "would supply and assemble the Hopper at Dal-Tile's Dickson, Tennessee location." (*Id.* ¶ 14.)

On March 21, 2020, during the course and scope of his employment with Dal-Tile, plaintiff James Nixon was operating the Hopper that was "supplied by" Sacmi and "designed, manufactured, and/or sold by" Bevini. (*Id.* ¶ 17.) Clay is loaded into the Hopper with a front-end loader. (*Id.* ¶ 11.) "There is a rotating tiller near the bottom of the [H]opper," which "break[s] down clay into smaller pieces [that] are then conveyed to various parts of the facility." Id. ¶ 12.) While Nixon was operating the Hopper, "[t]he clay caused the tiller to clog up and stop rotating." (*Id.* ¶ 17.) Nixon used a pipe wrench to try to unclog the tiller. When the "jam broke loose and the shaft began turning," the pipe wrench struck Nixon in the abdomen and dominant hand, causing severe and permanent injuries. (*Id.* ¶¶ 17, 21–22.)

The plaintiff alleges that his actions in attempting to unclog the tiller were foreseeable, but the Hopper did not "contain an appropriate emergency shut-off device to immediately stop the tiller and the hopper's motion" under circumstances such as those leading to the plaintiff's injuries and that the tiller and hopper were not "appropriately guarded." (*Id.* ¶¶ 15–16.) The plaintiff asserts that the defendants failed to warn of the hazard created by the lack of an automatic shutoff or guarding device, that the hazard created by the absence of an automatic shutoff or guarding device was not obvious or apparent to the ordinary user, and that Nixon's injuries were caused by the defect in the Hopper, namely its failure to have an automatic shutoff or a guarding device. (*Id.* ¶¶ 19–20, 22.)

Based on these allegations, the plaintiff asserts claims against both defendants under the Tennessee Products Liability Act for (1) strict liability; (2) negligence; (3) failure to warn; and (4) breach of warranty. He seeks to recover damages in excess of $10,000,000, plus interest and all expenses and costs allowed by law.

Following the filing of the Amended Complaint, defendant Sacmi filed an Answer, asserting various affirmative defenses and denying liability, and a Crossclaim against Bevini for indemnification. Sacmi does not contest the court's exercise of personal jurisdiction over it. Sacmi alleges in the Crossclaim that Sacmi contracted with Bevini to "sell and supply the machinery described . . . in Plaintiff's Amended Complaint to third parties, including to Dal-Tile Corporation." (Doc. No. 37, Crossclaim ¶ 2.) It further states that it "was an independent contractor and seller of Bevini's products." (*Id.* ¶ 6.)

In lieu of a responsive pleading, Bevini filed its Rule 12(b)(2) Motion to Dismiss the Complaint and a separate Motion to Dismiss Crossclaim, asserting in both that this court lacks personal jurisdiction over it. Bevini's motions are supported by the Affidavits of its Italian legal

counsel and CEO. The plaintiff filed his Response in opposition to the Motion to Dismiss the Complaint on the same day as a Motion to Stay, in which he also requests that the parties be permitted to conduct discovery related to jurisdiction and to present their findings at an evidentiary hearing. With his filings, the plaintiff submitted screenshots of Bevini's website and his proposed discovery. Sacmi filed a Response to the Motion to Dismiss Crossclaim, in which it expressly recognizes that its ability to bring a crossclaim against Bevini in this court is premised on the plaintiff's ability to establish this court's personal jurisdiction over Bevini for purposes of the plaintiff's claims against it. (Doc. No. 51, at 1.) Bevini filed a Combined Reply in support of its own Motion to Dismiss and Response in opposition to the plaintiff's Motion to Stay, along with a second set of Affidavits from its Italian legal counsel and CEO. Sacmi filed a Response to the plaintiff's Motion to Stay, in which it does not espouse a position either for or against the motion, but it submits with its Response "transportation and purchase order documentation relevant to the underlying transaction in this case to assist the Court in its determination" of the pending motions. (Doc. No. 54, at 2.) The plaintiff filed a Combined Reply to both defendants' Responses to his Motion to Stay, and Bevini, with the court's permission, filed a Surreply, along with a third set of Affidavits from its Italian legal counsel and its CEO.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a defendant to file a motion to dismiss for lack of personal jurisdiction. Although the defendant is the moving party on such a motion, the plaintiff, as the party who invokes the court's jurisdiction, bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). On a motion to dismiss for lack of personal jurisdiction, district courts have discretion whether to decide the motion on affidavits alone, permit discovery on the issue, or

conduct an evidentiary hearing to resolve factual questions. *See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The plaintiff's burden of proof is "relatively slight where . . . the . . . court rules without conducting an evidentiary hearing." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (internal quotation marks and citation omitted).

"To defeat dismissal in this context, [the plaintiff] need make only a *prima facie* showing that personal jurisdiction exists." *Id.* To determine whether the plaintiff has made such a showing, the court considers the pleadings and any affidavits submitted by the parties in the light most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Dismissal under Rule 12(b)(2) is appropriate only if the specific facts alleged by plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Publ'g.*, 327 F.3d 472, 478 (6th Cir. 2003).

### B.     Personal Jurisdiction

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Thus, in order for this court to have personal jurisdiction over a defendant, the plaintiff must show that the defendant has (or had) sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"Personal jurisdiction may be found either generally or specifically." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (quoting *Air Prods.*, 503 F.3d at 549–50).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Id.*

## III.   DISCUSSION

Bevini, S.R.L. ("Bevini") argues that its contacts with Tennessee give rise to neither general nor specific jurisdiction. The plaintiff concedes that general jurisdiction does not apply. (*See* Doc. No. 47, at 5 ("Here, only specific jurisdiction is at issue.").) The court, therefore, will focus its analysis on the question of specific jurisdiction.

### A.   Specific Jurisdiction

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp.*, 282 F.3d at 887. Tennessee's long-arm statute provides the relevant governing state statute, and that statute has been interpreted by state and federal courts as "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution. *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Payne v. Motorists' Mut. Ins. Cos*., 4 F.3d 452, 455 (6th Cir. 1993)); *see also Crouch Ry. Consulting, LLC v. LS Energy Fabrication, LLC*, 610 S.W.3d 460, 471 (Tenn. 2020) ("We have recognized that Tennessee's long-arm statutes expand the jurisdictional reach of Tennessee courts 'as far as constitutionally permissible.'" (quoting *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 384 (Tenn. 2015)). Because "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical," "the two inquiries

merge and the court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Intera Corp.*, 428 F.3d at 616 (citations and internal quotation marks omitted).

Specific jurisdiction deals with a defendant's contacts with the forum state relating to the claims at issue. When determining whether a district court's exercise of personal jurisdiction would offend due process, "[t]he relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen* , 935 F.2d at 1459 (quoting *Int'l Shoe* 326 U.S. at 316). The Supreme Court recently described the parameters of specific jurisdiction, as follows:

> Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Ford Motor Co. v. Mont. Eighth Judicial District Court*, 141 S. Ct. 1017, 1024–25 (2021) (internal quotation marks and citations omitted).

The Sixth Circuit long ago articulated a similar test to guide the determination of whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough

connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). While all three elements must be satisfied, the "purposeful availment" element is the "*sine qua non* for in personam jurisdiction." *Air Prods.*, 503 F.3d at 550 (quoting *S. Mach. Co.*, 401 F.2d at 381–82).

### B.    Whether the Plaintiff Can Establish Bevini's Purposeful Availment

Under the test articulated by the Supreme Court and the Sixth Circuit, the plaintiff must establish that Bevini "acted or caused a consequence" in Tennessee such that it "invoked the benefits and protections of [Tennessee] law" and, thus, could have "reasonably anticipate[d] being haled into court there." *MAG IAS Holdings*, 854 F.3d at 900 (citations omitted). "[P]urposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *Id.* (quoting *Burger King*, 471 U.S. at 475–76). The focus of the inquiry is on the "defendant's contacts with the forum State itself" rather than with the plaintiff or other parties. *Id.* (quoting *Walden*, 571 U.S. at 285). Thus, "mere injury to a forum resident is not a sufficient connection to the forum." *Bulso v. O'Shea*, No. 3-16-0040, 2017 WL 563940, at *2 (M.D. Tenn. Feb. 13, 2017), *aff'd*, 730 F. App'x 347 (6th Cir. 2018). Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290; *see also Bridgeport Music*, 327 F.3d at 478–79 ("The emphasis in the purposeful availment inquiry is whether the defendant has engaged in 'some *overt actions* connecting the defendant with the forum state.'" (quoting *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998)) (emphasis added)).

The allegations in the Amended Complaint, standing alone, are clearly inadequate to state a *prima facie* case for personal jurisdiction over Bevini. They do not show that Bevini engaged in any activities within the state of Tennessee, created continuing obligations to residents of the state, or, indeed, formed any contact with the state. The sole connection to the state evident from the Amended Complaint is that Bevini, an Italian corporation, sold the Hopper *in Italy* to Sacmi, another Italian company. To be sure, the Amended Complaint also alleges that Sacmi entered into a contract with Dal-Tile in Tennessee to sell and install the product in Tennessee, but it does not allege facts suggesting that Bevini had any involvement in that transaction. The allegations in the Amended Complaint do not establish that Bevini engaged in any "overt action[] connecting the defendant with the forum state." *Bridgeport Music*, 327 F.3d at 478–79.

The plaintiff insists that Sacmi "alleges that it contracted with Bevini to have [its] product sold to a Dal-Tile facility in the state of Tennessee." (Doc. No. 47, at 7 (citing Doc. No. 37, Crossclaim ¶ 3).)[1] Even assuming that the allegations in the Crossclaim are relevant to the question of whether the *plaintiff* has made a *prima facie* showing that personal jurisdiction exists, Sacmi actually alleges, somewhat ambiguously, that it contracted with Bevini to "sell and supply the machinery at issue . . . to third parties, including to Dal-Tile Corporation." (Crossclaim ¶ 3.) Because it is undisputed that Bevini manufactured the Hopper and sold it to Sacmi and that Sacmi sold and supplied the Hopper to Dal-Tile, the court understands Sacmi to be stating only that it bought the machine from Bevini in order to sell it, or for the purpose of selling it, to a third party. It may reasonably be inferred from Sacmi's allegation that Bevini knew that Sacmi would sell the

---

[1] The plaintiff apparently intended to cite paragraph 2 of the Crossclaim. In addition, the plaintiff asserts that Bevini "knowingly benefited from that sale," citing paragraphs 8–10 of the Crossclaim. (Doc. No. 47, at 7.) The Crossclaim, however, contains only seven paragraphs. (*See* Doc. No. 37, at 10–11.)

Hopper to a third party, and perhaps even to Dal-Tile in Tennessee. The mere fact that Bevini sold the product to another Italian company, knowing that it would sell it to a third party located in Tennessee, is not sufficient to establish Bevini's "purposeful availment" of the opportunity to conduct business in Tennessee, however.

As relevant to this case, the Sixth Circuit has adopted the "stream of commerce 'plus' approach," under which "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Bridgeport Music*, 327 F.3d at 479 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) (O'Connor, J.) (plurality op.)). Under this approach, "for a defendant to purposely avail himself of the privilege of acting within a forum state, he must do more than merely place a product into the stream of commerce." *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019) (quoting *Bridgeport*, 327 F.3d at 479). The plurality opinion in *Asahi* provides examples of "[a]dditional conduct of the defendant" that could serve to create jurisdiction, including "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112.

The plaintiff does not allege or point to any facts suggesting that Bevini designed the product for the American market, advertises in Tennessee or anywhere else in the United States, has contact with end purchasers of its product in the United States, or markets its products through a third-party distributor who functions as a sales agent in Tennessee or anywhere else in the United States.[2] In the absence of these types of contacts, the plaintiff points to Bevini's website, which

_____

[2] In the Affidavits submitted by Bevini in support of its Motion to Dismiss, its CEO affirms that Bevini did not contract with Dal-Tile, does not advertise or solicit business in Tennessee, has had no direct contact with Tennessee, has no United States sales agents, has not engaged Sacmi as

provides a portal through which users can submit inquiries about Bevini's products and about the purchase of spare parts. In addition, with regard to the spare parts, the website states (apparently as translated from the Italian by Google[3]): "Bevini is authorized to supply spare parts for all types of material, commercial and custom, they are original and MADE IN ITALY and are packed according to FAO ISPM-15 standards for fumigation allowing compliance with all the regulations in the world." (Doc. No. 47, at 8 (citing Doc. No. 47-2, at 2 (screenshot of website page)).) The plaintiff also points to Bevini's website page proclaiming its presence in "over 90 countries worldwide." (*See* Doc. No. 47-3, at 3.) He argues that, [i]f Bevini can advertise and sell spare parts *anywhere in the world*, and it can ensure compliance with the applicable regulatory framework *anywhere in the world*, it can reasonably anticipate the malfunction of one of its products *anywhere in the world*, including in Tennessee[.]" (Doc. No. 47, at 8 (emphasis in original).)

The Sixth Circuit has acknowledged that the defendant's operation of a website can establish its purposeful availment of the privilege of acting in a forum state. The relevant question is whether "the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Neogen Corp.*, 282 F.3d at 890). The court has explained that there are "three levels of interactivity of websites,

---

a sales agent or distributor, and never shipped any product directly to Dal-Tile. (Doc. No. 39-1, Lenzi Aff. ¶¶ 10, 13, 15; Doc. No. 53-1, Second Lenzi Aff. ¶¶ 5, 7; Doc. No. 62-1, Third Lenzi Aff. ¶ 9.) These allegations do not contradict any facts plausibly alleged by the plaintiff. Consideration of Lenzi's Affidavits, therefore, would not give rise to a need for a hearing to resolve factual disputes. The court does not find it necessary to rely on these Affidavits, however, as the facts as alleged by the plaintiff are simply insufficient to establish purposeful availment.

[3] The plaintiff also asserts that Bevini's website, though in Italian, "is easily translated to English with a single mouse click." (Doc. No. 47, at 2.) While the question of whether the website is posted in English, Italian, or both has little or no relevance to the purposeful availment question, the plaintiff points to no evidence that Bevini itself had any input into or control over the translation of its website into English. In addition, Lenzi avers that Bevini hosts a website in Italian and that "[a]ny translation services are only offered through a third party like Google." (Doc. No. 53-1, Second Lenzi Aff. ¶ 4.)

including: (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer." *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (internal quotation marks and citation omitted). In *Bird*, the court found that, "by maintaining a website on which Ohio residents can register domain names and by allegedly accepting the business of 4,666 Ohio residents," the defendants reached out to Ohio and purposefully availed themselves of the privilege of conducting business there. *Bird*, 289 F.3d at 874. Similarly, in *Neogen*, the defendant was found to have purposefully availed itself of the privilege of doing business in Michigan by granting its clients passwords to access its services on its website and by welcoming the business of Michigan customers on a regular basis. *Neogen*, 282 F.3d at 890.

"[A] website is passive if it simply posts product and contact information." *See, Inc.*, 167 F. App'x at 522 (citing *Neogen*, 292 F.3d at 890). Based on that definition, Bevini's website is not purely passive, as it allows users to fill out an information request form relating to spare parts, providing their contact information and the details of their request. (*See* Doc. No. 47-2, at 2.) At the same time, Bevini's website clearly was not interactive to the same degree as those of the defendants in *Bird* and *Neogen*. The screenshots supplied by the plaintiff make it clear that the website does not target Tennessee; nor does the website allow purchases of machinery or spare parts directly from the website. With respect to the website's reference to compliance with worldwide regulations, it is clear from the context that Bevini is talking about *packaging* regulations, not manufacturing regulations. Bevini's website is not "interactive to a degree that reveals specifically intended interaction with residents of the state," *Bird*, 289 F.3d at 874; *Neogen*, 282 F.3d at 890. Bevini's maintenance of a website that simply allows individuals to request

additional information is "not an act . . . purposefully directed toward the forum State." *Bridgeport Music*, 327 F.3d at 479.

The plaintiff also argues that a "foreign manufacturer cannot use an 'independent distributor' to insulate [itself] from litigation in the forum state" (Doc. No. 47, at 6, 7), citing *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528 (6th Cir. 1993), and *Mott v. Schelling & Co.*, No. 91-1540, 1992 WL 116014, at *6 (6th Cir. May 29, 1992). In *Tobin*, the Sixth Circuit reversed the district court's dismissal, for lack of personal jurisdiction, of the foreign manufacturer of the drug that caused the plaintiff's injuries. There, the court found that the manufacturer more than satisfied *Asahi*'s "stream of commerce 'plus'" test, where the drug manufacturer, among other things, (1) submitted to the FDA a "new Drug Application" to obtain approval to sell the drug in the United States; (2) came to the United States and conducted clinical studies to further the FDA's approval; (3) sought out and negotiated a licensing agreement with co-defendant Astra Pharmaceuticals, pursuant to which Astra would distribute the drug throughout the United States; and (4) required Astra to continue to consult with it in its dealings with FDA. *Tobin*, 993 F.2d at 543. The court found that these efforts directed toward the United States established "'something more' than mere awareness that the stream of commerce will sweep the product into the forum state," as they showed that the defendant "made a deliberate decision to market [its drug] in all 50 states, including Kentucky, the forum state." *Id.* (quoting *Asahi*, 480 U.S. at 111–12).

In *Mott*, the Sixth Circuit affirmed the exercise of personal jurisdiction over the foreign manufacturer of the product that caused the plaintiff's injury. There, the court found it relevant that the defendant maintained an exclusive American sales agent that specialized in selling to the American market and that the defendant "actively cultivated" the American market over the course of more than a decade. Among other things, the defendant designed its product to meet American

standards; its employees had come to the United States to sell its machines; the defendant distributed brochures in the United States; most of the machines it sold in the United States were installed by "fitters" employed by the defendant; and employees of the defendant came to United States to inspect, test, and adjust the machines. 1992 WL 116014, at *5. In addition, the manufacturer did not ship its product to its distributor until the distributor had actually made a sale, and, at that point, the manufacturer shipped a machine directly to the distributor in the United States. Finally, an employee of the manufacturer accompanied the machine at issue in that case to install it at the plaintiff's employer's plant and to demonstrate its use. The court found that all of the defendant's actions together established the requisite "minimum contacts" with the forum state and the defendant's purposeful availment of the opportunity to conduct business there. *Id.* at *6.

Neither *Tobin* nor *Mott* supports a finding of jurisdiction in this case. Here, Sacmi admits that it "does not have, nor has it ever had, a specific distribution agreement or other similar contract with Bevini relevant to the underlying transaction at issue in this case." (Doc. No. 54, at 2.) There is no suggestion that Bevini has a relationship with any U.S.-based sales agent, that it does business in Tennessee, or that it directs business toward Tennessee.

The only fact to which the plaintiff can point in support of personal jurisdiction is that Bevini may have known when it sold the Hopper to Sacmi that the product was destined for Tennessee. Assuming that it did, that single fact is insufficient to warrant the exercise of personal jurisdiction over Bevini. There is no suggestion that Bevini was involved in Sacmi's contact with Dal-Tile or the sale itself, encouraged or facilitated it, or, indeed, had any involvement in it whatsoever. In sum, Bevini did not engage in any "overt action[] connecting [it] with the forum state." *Bridgeport Music*, 327 F.3d at 478. The plaintiff has not shown that Bevini purposefully availed itself of the privilege of conducting business in Tennessee.

As purposeful availment is the *sine qua non* of personal jurisdiction, the plaintiff's inability to establish this factor is dispositive. Further, the fact that the Bevini has no contacts with Tennessee means that the plaintiff's claim does not arise from or relate to Bevini's contacts with Tennessee and that it would be unreasonable for the court to exercise jurisdiction over Bevini. With regard to the plaintiff's arguments regarding fairness and Tennessee's interest in resolving this dispute, the court notes that the Tennessee Products Liability Act specifically contemplates situations in which a manufacturer will not be amenable to personal jurisdiction, and the statute authorizes claims against sellers instead in that situation. *See* Tenn. Code Ann. § 29-28-106(4) ("No product liability action . . . shall be commenced or maintained against any seller, other than the manufacturer, unless . . . [t]he manufacturer or distributor of the product or part in question is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process."). Co-defendant Sacmi, the seller of the product that allegedly injured the plaintiff, does not dispute service or personal jurisdiction in this case. Clearly, it would be more convenient, especially for Sacmi, for the plaintiff to be able to resolve his claims against both defendants in one proceeding, but convenience does not trump due process. The plaintiff is not deprived of a remedy in this case, and no other extraordinary factors outweigh the plain fact that Bevini did not purposefully avail itself of the privilege of conducting business in Tennessee.

### C.   The Motion to Dismiss Crossclaim

Sacmi's Response to the Motion to Dismiss the Crossclaim concedes that the exercise of jurisdiction over Bevini by this court, for purposes of the Crossclaim, is entirely dependent upon whether the plaintiff establishes that the court may exercise jurisdiction over Bevini for purposes of the claims in the Amended Complaint. (Doc. No. 51, at 1.) Because the court finds that it lacks personal jurisdiction over Bevini, the Motion to Dismiss the Crossclaim will also be granted.

**IV.   CONCLUSION**

For the reasons set forth herein, both of the defendant's Motions to Dismiss (Doc. Nos. 38, 43) will be granted, and the plaintiff's and Sacmi's claims against Bevini will be dismissed without prejudice. Because the plaintiff has failed to establish a *prima facie* basis for the exercise of jurisdiction, the court will deny the plaintiff's motion to stay the case while the parties conduct jurisdictional discovery (Doc. No. 48).

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge