# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JAMES NIXON, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-01103** |
| | ) | **Judge Aleta A. Trauger** |
| **SACMI IMOLA S.C.** *et al.*, | ) | **Magistrate Judge Barbara Holmes** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER

Before the court is the Motion for Review of Nondispositive Order of Magistrate Judge (Doc. No. 113), in which defendant Sacmi Imola, S.C. ("Sacmi") asks to court to modify a small portion of Magistrate Judge Holmes's Memorandum Opinion and Order granting (for the most part) plaintiff James Nixon's Motion to Compel (Doc. No. 96). As set forth herein, the court has conducted a *de novo* review of the issue raised by Sacmi but finds that the defendant has not established a basis for rejecting or modifying any part of the underlying Order. The defendant's Motion, therefore, will be denied, and the underlying Order will be affirmed.

## I.     LEGAL STANDARD

When a party files timely objections to a magistrate judge's opinion and order concerning a nondispositive matter, the district judge "must consider [these] objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). *See also* 28 U.S.C. § 636(b)(1)(A); *Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003).

"A finding is 'clearly erroneous' [if] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 39 (1948));

*see also Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence . . . [the] choice between them cannot be clearly erroneous.").

A legal conclusion is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. Winsper*, No. 3:08-CV-631-H, 2013 WL 5673617, at *1 (W.D. Ky. Oct. 17, 2013)). Legal conclusions are reviewed *de novo*. *Id.*

## II. BACKGROUND

The court presumes familiarity with this case and the circumstances of the underlying discovery dispute and recites herein only that background necessary to an understanding of this ruling.

The parties first notified the court that a discovery dispute had arisen in mid-September 2023. (Doc. Nos. 85, 90.) Following a telephone conference with the parties, the court referred the dispute to Magistrate Judge Homes. (Doc. No. 93.) Judge Holmes then entered an Order ("October 5 Order") setting a briefing schedule for the filing of a motion to compel, response, and reply and stating in detail the procedure the parties were to follow and the information they should include in their filings. (Doc. No. 94.) As particularly relevant here, the October 5 Order expressly notified the parties that if they cited or relied upon foreign law, they must "provide specific citation to said foreign law (with a copy of the applicable foreign statute, rule or other law if not readily available through a platform such as Westlaw) and provide a *detailed explanation as to why and how that law applies to these discovery disputes*." (*Id.* at 3 (emphasis added).) The court also scheduled an in-person discovery conference.

In accordance with the October 5 Order, the plaintiff filed his Motion to Compel, asking the court to compel the defendant to: (1) produce documents in response to his Requests for Production ("RFPs") Nos. 1 and 2; (2) supplement its document production; (3) identify

documents withheld on the basis of privilege or any other ground; (4) bear the cost of translating approximately 10,000 pages of documents produced in Italian; (5) provide a Rule 30(b)(6) witness to testify on Topics Nos. 11 and 20 from the previously issued notice of Rule 30(b)(6) deposition; and (6) pay Plaintiff's reasonable expenses incurred in connection with the discovery dispute. (Doc. No. 96, at 1–2.)

The defendant filed a Response in opposition to the motion, arguing generally that the scope of the additional discovery the plaintiff sought to compel was not relevant or proportional to the needs of the case and not within the defendant's "possession, custody or control." (Doc. No. 99.) Regarding the latter argument, the defendant asserted that, insofar as the plaintiff sought to compel the production of employee emails, "Italian law does not permit [employers] to independently search the electronic devices or emails of its employees in the absence of legitimate and well-founded suspicions on the part of the employer regarding the commission by the employee of an offense or breach of contract by the employee." (Doc. No. 99, at 9.) In support of that broad assertion, Sacmi cited very generally Article 15 of the Italian Constitution; Article 4 of the Italian Workers' Statute (Law 300/1970); Italian Authority for the Protection of Personal Data's Guidelines for Electronic Mail and Internet – 1 March 2007, Doc Web No. 1387978; Article 616 of the Italian Criminal Code;[1] and Italian Supreme Court of Cassation, Ruling No. 34092 (November 12, 2021)). (Doc. No. 99, at 9.) It did not provide copies of the cited authority, nor did it provide a "detailed explanation as to why and how that law applies to these discovery disputes," as required by the October 5 Order. Indeed, it supplied virtually no explanation whatsoever. It simply posited the existence of this authority and asserted that it made it illegal for Sacmi to obtain

---

[1] The Magistrate Judge noted that, at the hearing on the Motion to Compel, counsel for the defendant also relied on Article 617 of the Italian Criminal Code. (Doc. No. 104, at 15 n.12.)

and produce the requested employee emails. At the same time, Sacmi acknowledged U.S. Supreme Court authority to the effect that "[a foreign nation's blocking] statute[][2] do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute," but it asserted that the plaintiff's motion "does not satisfy any of" the five factors relevant to the consideration of whether an American court should direct a foreign party to produce discovery. (*Id.* at 9–10 (citing *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 (1987); Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c) (1987)).) Sacmi, however, also did not actually address those factors or provide any guidance for their application.

Following Sacmi's filing, the Magistrate Judge promptly entered a brief Order directing it to comply with the October 5 Order by suppling copies of the foreign statutes, rules, and other authority cited in its Response (Doc. No. 100), which it did, along with English translations of the relevant portions (Doc. No. 101). In his Reply, the plaintiff argued, among other things, that the defendant had failed to carry its burden of showing that Italian law relieved it of its discovery

---

[2] So-called "blocking statutes" are designed to "prohibit[] the disclosure, copying, inspection, or removal of documents located in the territory of the enacting state in compliance with the orders of foreign authorities." Restatement (Third) of Foreign Relations Law § 442 (1987) (Oct. 2023 Update). As one commentator has explained, many nations passed blocking statutes "[i]n order to ensure that the United States would respect and follow the Hague Convention procedures" "by which litigations in the United States (and elsewhere) could obtain documents and testimony from foreign states." Geoffrey Sant, *Court-Ordered Law Breaking U.S. Courts Increasingly Order the Violation of Foreign Law*, 81 Brook. L. Rev. 181, 185 (2015) (footnoted citations omitted). Such blocking statutes make it "a crime to collect evidence (other than through the Hague Convention) within the foreign nation for use in litigation outside that nation." *Id.* (footnoted citation omitted). However, "U.S. discovery abroad could [also] potentially violate . . . substantive . . . laws . . . created for independent public policy reasons." *Id.* (footnoted citations omitted).

obligations, particularly with respect to "gathering responsive information on employees' electronic devices," and, further, that it had waived its objection based on Italian law by failing to raise it until eight days before the close of fact discovery. (Doc. No. 103, at 4–5.)[3]

The Magistrate Judge largely granted the plaintiff's Motion to Compel, specifically finding that the discovery requested by the plaintiff is relevant, though overly broad,[4] that the requested information is proportional to the needs of the case, and that the defendant had failed to establish that the requested discovery was not within its possession, custody or control. With respect to the "possession, custody or control" question, the court first noted that the requested discovery "calls for more than employee emails." (Doc. No. 104, at 14.) To the extent the discovery does call for employee emails, the Magistrate Judge found that the party "claiming the 'shelter of foreign law' bears the burden of establishing that foreign law, in fact, bars production," and that, to make such a showing, "the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." (Doc. No. 104, at 16 (quoting *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16CV-00024-RGJ-RSE, 2019 WL 1261352, at *12 n.6, *11 (W.D. Ky. Mar. 19, 2019)).) The Magistrate Judge ultimately found that the defendant did not carry that burden, as it failed to provide "any context, explanation, or argument" as to how the Italian Criminal Code provisions or the other authority on which it relied prevented the defendant from

---

[3] Notably, in its responses to the plaintiff's RFPs, the defendant stated only that it had "no responsive documents that were in its possession, custody or control prior to the commencement of litigation in this matter." (*See* Doc. No. 98-1, at 3–4.) It did not attempt to explain *why* employee emails were not in its possession, custody or control.

[4] The court found the two RFPs at issue to be overly broad, insofar as they were not limited as to time and could be interpreted to call for documents unrelated to the issues in this case. (Doc. No. 104, at 11–12.) The discovery Order, accordingly, limited the scope of the two RFPs at issue to correct that overbreadth. (*Id.* at 12.)

"collecting emails or documents from its employees." (Doc. No. 104, at 17–18; *see also id.* at 18–20.)

The Magistrate Judge also found that, even if the court assumed that Italian law barred the defendant's disclosure of the requested documents, "the factors suggested by the Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) weigh in favor of compelling the disclosure." (*Id.* at 21 (citing *Société Nationale*, 482 U.S. at 544 n.28 (1987));[5] *see id.* at 21–22 (analyzing and weighing the *Société Nationale* factors).)

And finally, the Magistrate Judge noted that Sacmi's argument about its inability to legally produce its employees' emails responsive to the plaintiff's requests "presumes that the only way to gather those documents is through subversive and undisclosed means" and that there was "no way under Italian law to legally review employee emails." (*Id.* at 22.) The Magistrate Judge found that Sacmi's approach failed to recognize that it could "ask its employees to gather responsive documents rather than do so itself without their knowledge," thus allowing employees to retain personal emails unrelated to the litigation and largely obviating the privacy concerns raised in the defendant's response. (*Id.*) The Magistrate Judge recognized that Sacmi had posted a notice in its Italian office, asking employees to collect and deliver to its attorney any documents relating to the product that is the subject of this litigation. Sacmi, despite this request, has not produced any emails and has not addressed "the fact that responsive emails may exist on servers that it controls." (Doc. No. 104, at 22.)[6]

---

[5] The Supreme Court cited the "Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986)." *Société Nationale*, 482 U.S. at 544 n.28. It appears that the language quoted in *Société Nationale* is actually incorporated in § 442 of the Restatement (Third) of Foreign Relations Law (1987).

[6] Sacmi has introduced into evidence an English language version of the posted notice, which broadly directs all Sacmi employees to "maintain, preserve," "collect," and deliver to

Based on her findings, as relevant for purposes of the defendant's Motion for Review, the Magistrate Judge directed the plaintiff to serve revised RFPs on the defendants, consistent with the Magistrate Judge's limitation of their scope, and ordered the defendant to respond to the revised RFPs within 30 days. (Doc. No. 104, at 28.)

## III.   THE MOTION FOR REVIEW

The defendant filed its timely Motion for Review and supporting Memorandum, seeking review of that portion of Part II(1)(iii) of the Order, "wherein," according to Sacmi, "the Magistrate Judge determined that the requested documents are within Sacmi's possession, custody or control, despite Sacmi's citations to Italian data privacy laws that prohibit Italian employers, such as Sacmi, from collecting and searching its employees['] email communications without their consent." (Doc. No. 113, at 1; *see also* Doc. No. 114, at 2.) In the Memorandum accompanying its Motion for Review, Sacmi argues that the Order is "clearly erroneous or contrary to law," to the extent that it purports to compel Sacmi to violate Italian data privacy law by "unilaterally searching and accessing its employees['] email communications without their consent." (Doc. No. 114, at 2.) Sacmi insists that its position, contrary to how the Magistrate Judge repeatedly characterized it, is not that Italian law "bars production of . . . employee emails," but rather that Italian law does not permit it to "independently search the electronic devices or emails of its employees." (*Id.* at 2–3.) In other words, it appears to be arguing that the Italian privacy laws at issue here are not "blocking

---

Sacmi's lawyer all "paper and/or electronic documents" "relating to the Bevini hopper mod. TRM, serial number 3175M03." (Doc. No. 99-3.)

The Magistrate Judge did not draw conclusions from Sacmi's failure to produce any emails that might have been collected and delivered by employees in response to this request, but their absence may suggest that (1) employees supplied them but Sacmi did not produce them; (2) Sacmi's request was not sufficiently clear that emails were among the documents employees were required to search and produce; (3) employees simply ignored the request; or (4) employees searched but did not find any responsive documents. Sacmi made no effort to explain which of these might be correct.

statutes" of the type addressed by the Supreme Court in *Société Nationale*, because they are not intended to prevent Sacmi from responding to discovery requests, and that this distinction makes a difference when it comes to analyzing the factors relevant to the consideration of whether the court should order production of documents by a foreign party, even if the requested production violates the law of that party's domicile.

In support of its Motion for Review, and despite its utter failure to comply with Magistrate Judge Holmes' explicit direction in the October 5 Order that any party relying on Italian law must "provide a detailed explanation as to why and how that law applies to these discovery disputes," Sacmi now faults the Magistrate Judge for raising but not answering several questions concerning the interpretation of Italian law that *Sacmi* failed to address in its briefing or argument on the Motion to Compel. In an attempt to remedy its inadequate treatment of the question and to answer the questions raised by the Magistrate Judge, Sacmi has now supplied the Affidavit of its Italian attorney, Alessandro Giorgetti (Doc. No. 113-1), containing more than seven pages of argument—substantially more than the single sentence and string citation to the various sources of Italian law contained in its original response (*see* Doc. No. 99, at 9).

The plaintiff filed a (belated) Response in opposition to the Motion for Review. (Doc. No. 118.) He argues that the defendant has failed to show that the Magistrate Judge made "clearly erroneous" findings of fact or reached legal conclusions that are "contrary to law." (Doc. No. 118, at 2.) He also contends that the court should disregard Sacmi's new evidence and new arguments and that, even if the court does consider the new material, Sacmi has still failed to carry its burden under Rule 72(a).

Generally, arguments not first raised before the Magistrate Judge are deemed waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[T]he Magistrate Judge Act, 28

U.S.C. § 631 *et seq.*, . . . absent compelling reasons, does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."); *see also Allgood v. Baptist Mem'l Med. Grp., Inc.*, 2:19-cv-02323-SHM-tmp, 2020 WL 821381, at *4 (W.D. Tenn. Feb. 19, 2020) ("[T]his Court cannot address arguments on objection to a nondispositive pretrial order unless the Magistrate Judge had occasion to address them." (citing *Evans v. Walgreen Co.*, No. 09-cv-2491, 2011 WL 2634348, at *2 (W.D. Tenn. July 5, 2011)). At the same time, the Sixth Circuit has recognized that, given good cause, the district courts have "[i]nherent power" to consider new evidence and new arguments when ruling on a motion to review a magistrate judge's decision on a nondispositive issue. *Banner v. City of Flint*, 99 F. App'x 29, 35 (6th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991)).

In this case, the defendant clearly could and should have presented more comprehensive support and argument in its initial briefing (and in its Motion for Review). Given the court's plenary review of legal issues, even on motions to review nondispositive orders, and the important issues of comity[7] involved in this dispute between a U.S. citizen and a foreign company, the court

---

[7] "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 (1987). As the Court further recognized there:

> When it is necessary to seek evidence abroad, . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. In addition, we have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation. American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.

*Id.* at 546 (internal citation omitted).

will exercise its "inherent power" to conduct a *de novo* review of the legal issue raised in the defendant's Motion for Review.

## IV.   ANALYSIS

Sacmi's initial briefing on this issue of Italian law did little to assist the Magistrate Judge in ruling on an important question of international law, and the additional briefing produced in the Motion for Review is little better.

The plaintiff's RFPs Nos. 1 and 2, as modified by the Magistrate Judge's Order (and not contested by the defendant's Motion for Review), incorporate requests for the production of Sacmi employee email communications concerning the plaintiff and concerning "Sacmi's involvement in the delivery, installation, and maintenance of the Hopper during the time period of 2014 to March 21, 2020," the events in the Complaint and Amended Complaint, and Sacmi's claims and defenses. (*See* Doc. No. 104, at 12.) Sacmi's Response to the Motion to Compel, as set forth above, argued very broadly that requiring it to independently search employee emails to produce emails responsive to these requests would violate Italian law. It argues now only that the Magistrate Judge's analysis of Italian law was incorrect. Secondarily, it posits that "the Order's incorrect conclusions and interpretations of Italian law also led to an incorrect balancing of the comity factors [from the Restatement [Third] of Foreign Relations Law, assuming *arguendo* that they would be applicable to the Italian data privacy sources of law implicated by the issues in this case." (Doc. No. 114, at 8.) Sacmi, again, does not show how the balancing was incorrect or suggest how the factors should be weighed.

In his Affidavit, attorney Giorgetti states that the "primary sources of Italian law that constitute the Italian Data Privacy legislation" include Article 15 of the Italian Constitution;

Articles 615, 616, and 617 of the Italian Criminal Code;[8] Article 4 of the Italian Workers' Statute (Law 300/1970); Guidelines Applying to the Use of E-Mails and Internet in the Employment Context – 1 March 2007, issued by the Italian Data Protection Authority ("Garante"); and "Legislative Decree no. 196 of 30 June 2003 also known as Data Protection Code.[9] According to Giorgetti, none of these cited sources "differentiate[s] or recognize[s] a legal distinction between" personal and professional correspondence, including email. (Giorgetti Aff. ¶ 6.) He points out that Article 15 of the Italian Constitution provides that the "freedom and secrecy of correspondence and any other form of communication are inviolable." (*Id.*)

Giorgetti addresses the Magistrate Judge's statement that Sacmi's Response failed to show that an employer's access to its employees' emails would violate Article 15, stating that "[a]ny violation of Italian constitutional principles is a source of civil and criminal liability under Italian law." (*Id.* ¶ 7.) He asserts that "unauthorized" access to or search of any employee's email account, irrespective of whether it is personal or professional, would violate the constitutional right to the secrecy of correspondence and Articles 615-ter, 616, and 617 of the Italian Criminal Code, giving rise to the possibility of a right of restitution as well as a civil tort claim. (*Id.* ¶¶ 8–12.) As Giorgetti explains, Article 615-ter states in its first paragraph: "[A]nyone who illegitimately enters a computer or telematic system protected by security measures or remains there against the express or tacit will of those who have the right to exclude him, [may be] punished with imprisonment of up to three years." (Giorgetti Aff. ¶ 8.) Article 616 makes it a crime to read an unopened letter or email addressed to someone else, to steal, destroy, or suppress correspondence, whether opened or

---

[8] The defendant's Response to the Motion to Compel cited only Article 616, but its attorneys also relied on Article 617 at the hearing on the motion. Article 615 was not referenced in the defendant's Response.

[9] Contrary to Giorgetti's assertion, Legislative Decree no. 196 was not referenced in the defendant's Response.

unopened, addressed to someone else, and to reveal the contents of such correspondence to a third party. (*See id.* ¶ 13; *see also* Doc. No. 101-4, at 185.) Article 617 makes it a crime to intercept a "telephon[ic] or telegraphic communication or conversation between other people or in any case not addressed to him" and to reveal the contents of such communications to third parties. (Doc. No. 101-4, at 185.)

Giorgetti points out that the Magistrate Judge erred in concluding that Articles 616 and 617, like Article 615, fall within that part of the Italian Criminal Code addressing "crimes against the inviolability of the domicile" (*see* Doc. No. 104, at 17) when, in fact, they fall under the heading, "crimes against the inviolability of secrets." (Giorgetti Aff. ¶ 14; *see also* Doc. No. 101-4, at 150, 152.) He also argues that the term "domicilio" (or domicile) as used in Italian law encompasses the place where a person has established "the principal seat of his affairs and interests." (Giorgetti Aff. ¶ 15 (quoting Italian Civil Code Art. 43).)

Giorgetti takes issue with the Magistrate Judge's statement that Sacmi has not met its burden of "demonstrat[ing] that Articles 616 and 617 of the Italian Criminal Code prevent[] it from producing the relevant correspondence." (Giorgetti Aff. ¶ 19.) According to Giorgetti, the Criminal Code does not prevent Sacmi from *producing* the relevant correspondence; the law prevents it from "the unauthorized search and collection of . . . emails . . . that reside in [its] employees' mailboxes or accounts." (*Id.*) He asserts that the Order as currently framed would "require Sacmi to violate" Articles 615-ter, 616, and 617 of the Criminal Code. (*Id.* ¶ 21.)

In further support of this interpretation of the Criminal Code, Giorgetti refers to an Italian Supreme Court ruling that addresses Italian Data Privacy legislation. The defendant supplied this ruling, in Italian, as an exhibit to its Response, but it only provided an (unofficial) translation of

one paragraph of it, without explaining the import of that particular paragraph or even why it only translated a single paragraph of the 23-page document. That paragraph states:

> Defensive technological controls "*strictu sensu*," *i.e.* on individual workers, can be considered legitimate, also following the modification of the art. 4 of the Workers' Statute, if targeted and implemented "ex post," or if, following the employer's well-founded suspicion regarding the commission of offenses by the worker, the employer himself takes care of collecting the information from that moment on.

(Doc. No. 101-5, at 24; *see also* Giorgetti Aff. ¶ 28.) According to Giorgetti, this single paragraph constitutes the "Massima" of the opinion—the "official abstract prepared and published by the Supreme Court Judges" and the only portion of the opinion that encapsulates the "relevant legal principle" to be drawn from the opinion that can be "applied to future cases of a similar nature under Italian law." (Giorgetti Aff. ¶¶ 25–26.) According to Giorgetti, this Massima "makes clear that any employer access to its employee's computer or mail-boxes system, other than as set forth by the so called defensive technological controls and within the strict limits articulated within the 'Massima,' would be illegitimate" and in violation of the worker's right to privacy. (*Id.* ¶ 29.)[10]

Giorgetti goes on to provide his interpretation of the Workers Statute, Article 4, Law no. 300/1970, which the Magistrate Judge dismissed as not relevant to the factual circumstances presented here. According to Giorgetti, this statute does not merely govern "remote monitoring" or "covert controlling" of worker activities, but also would cover any illegitimate access to employee emails. (*Id.* ¶¶ 31–38.)

Finally, Giorgetti addresses the import of the Garante's March 2007 "Guidelines Applying to the Use of E-Mails and Internet in the Employment Context," also cited but not explained in the defendant's Response. The Magistrate Judge considered this document and concluded as follows:

---

[10] The Massima does *not* make this clear. On its face, it authorizes certain "[d]efensive technological controls," but it does not define "ex post," and it does not purport to address all situations in which access to employee emails might be authorized.

> This guideline sets forth best practices for internal email policies so that employees have clear rules. Although this document focuses on the protection of employee emails, that concern is largely over personal emails rather than business emails. Defendant has not pointed the Court to any particular language within this document, but rather has relied on the document in a general sense. The Court is not clear if the guidelines contain an enforcement mechanism that could be levied against Defendant. Although these guidelines may apply to Defendant and guide its conduct with respect to the creation of internal company policies, Defendant has not met its burden to demonstrate that this guideline prevents it from accessing responsive documents.

(Doc. No. 104, at 20.) In a footnote, the Magistrate Judge also observed that the defendant had not provided the court "any information related to its internal email policies." (*Id.* at 20 n.15.)

Giorgetti takes issue only with the Magistrate Judge's presumption of a distinction between personal and professional emails, arguing that, "[u]nder the statute's plain language [referring to the Workers' Statute], it is evident that the primary scope of the Guidelines is to protect the secrecy and inviolability of the work-related communications and proper utilization of corporate information technology tools." (Giorgetti Aff. ¶ 41.) He points out that the Guidelines themselves "do not substitute the Data Privacy Code," but he also argues that they make it clear that professional email correspondence is protected by Italian data privacy laws, concluding: "Under the Guidelines' plain language, it is evident that any systematic scanning and copying of Sacmi employees' email messages and attachments contained in corporate email-boxes is not permitted, and if done would expose Sacmi to civil and/or criminal remedies under Italian law." (*Id.* ¶¶ 44, 45.)

The court is persuaded by Giorgetti's arguments and its own review of the Italian authority presented by the defendant that Italian law provides for the nearly inviolate protection of the privacy and confidentiality of individuals' written and electronic correspondence, regardless of whether it is created in a professional context and contained in an employer's email servers, as Sacmi argues. That said, however, the little guidance the court has been able to locate about how

Italian privacy laws pertain to employers' ability to search and produce employees' emails in response to discovery requests originating from a foreign lawsuit indicates that the issue is more complex than suggested by Sacmi's bald assertion that accessing employee emails is always illegal (and Giorgetti's assertion that Italian law does not recognize a legal distinction between personal and professional email correspondence).

In short, while it is clear that employees' personal emails are *always* inaccessible, the issue of an employer's ability to access "non-personal emails that only relate to the job carried out at the workplace" may depend on the policies and practices the employer has implemented and the adequacy of the employer's notices about these practices to its workforce. *See* https://www.dentons.com/en/insights/articles/ 2023/march/1/email-privacy-in-the-workplace-the-italian-perspective. This internet article explains that the Garante's March 2007 Guidelines, as well as recent decisions by the Garante on the same topic, identify steps that employers can take to insure that employees do *not* have an expectation of privacy or confidentiality in their workplace communications, which would presumably make these communications accessible by employers. Among other recommendations, employers could "provide for email accounts to be shared by a number of employees, thus making the non-private nature of the correspondence implicit," and "make a personal email account available to employees for their private purposes," thus making it clear that work emails are not private. *Id.*

Sacmi, as the Magistrate Judge noted, has not presented to the court *any* information regarding the workplace policies it put into place following the Garante's guidance on this topic. Did it put any such policies into place? Did it engage in practices and provide adequate notices such that employee work emails would not be subject to privacy protections? Its failure to provide this type of information makes it impossible for the court to determine whether it actually would

violate Italian law and potentially expose Sacmi to criminal and civil penalties for it to search and produce employee work-related emails on the topics covered by the plaintiff's RFPs. All the court has is its attorneys' assertions that doing so would always be illegal. This is not sufficient. *Accord Phoenix Process Equip. Co.* 2019 WL 1261352, at *13 ("Selectively citing to Russian laws that may or may not impact the production of the requested documents is insufficient to establish a forthcoming violation of Russian law."). Sacmi, in short, has failed to establish that accessing and searching its employees' work emails in order to comply with the Order granting the Motion to Compel would violate Italian law, even if the court accepts as true the general proposition that all individuals, including employees, have a well recognized and vigorously guarded right to privacy and confidentiality in their correspondence under Italian law.

For this reason, the court has no call to consider the factors identified in *Société Nationale* relevant to a determination of whether a court should order discovery, even if compliance with such an order would violate the law of the respondent's home country,[11] or whether the analysis suggested by *Société Nationale* is appropriate at all outside the context of "blocking statutes."[12]

Finally, even if the court were to presume that Sacmi has not adopted any procedures or practices making it clear to employees that work-related email communications are not private,

---

[11] The court again notes that neither of the parties briefed those issues. The plaintiff did not mention them in support of his Motion to Compel (likely because the defendant had the burden of proving that compliance with a discovery order would violate Italian law), and the defendant argued only that "Plaintiff's Motion does not satisfy any of the above referenced factors" (Doc. No. 99, at 10), leaving the Magistrate Judge to consider the factors essentially in a vacuum. Even now, in its Motion for Review, Sacmi does not conduct any analysis of these factors, instead stating only that Magistrate Judge conducted an "incorrect balancing of the comity factors." (Doc. No. 114, at 8.)

[12] Contrary to Giorgetti's assertion, the Magistrate Judge did not characterize the Italian laws at issue as blocking statutes. In fact, Sacmi is the party that indicated that consideration of the factors identified by *Société Nationale* would be appropriate if the court found that its compliance with a discovery order could require it to violate Italian law. It has therefore likely waived any argument to the contrary.

meaning that it likely *would* be illegal for it to "unilaterally search[] and access[] its employees[']

email communications without their consent," Sacmi has not established that such unilateral action

would be the only way for it to comply with the Magistrate Judge's Order. More to the point, it

has not presented evidence—aside from the production of the general and clearly inadequate notice

posted at its workplace—of its efforts to procure employees' consent to Sacmi's search of their

emails for content related to the matters at issue in this lawsuit or, alternatively, to persuade its

employees to conduct their own thorough searches and voluntarily produce such responsive

documents, redacting, if necessary, any personal or private information.[13] It would only be after

trying and failing to obtain emails through alternative methods that Sacmi would even potentially

be placed in the untenable position of either disregarding an order issued by this court or complying

with that order but violating Italian law.

     The court, cognizant of comity considerations, does not intend to compel Sacmi to do

anything that would violate Italian law, particularly without having conducted a searching and

thorough inquiry into the factors that would warrant such a step. Sacmi, however, has failed to

establish that complying with the plaintiff's RFPs would place it in derogation of the law and,

therefore, has provided no basis for setting aside the Magistrate Judge's Order granting the

plaintiff's Motion to Compel. To the extent it still believes that it would be illegal for it to

independently and secretly search its employees' emails for responsive documents, without their

permission, then it should endeavor to work both with the plaintiff and its own employees to reach

an acceptable solution to that problem.

---

[13] Employees may not have the ability to search for emails that have been deleted from
their inboxes but that remain on the employer's server.

**V.      CONCLUSION**

For the reasons set forth herein, Sacmi's Motion for Review (Doc. No. 113), seeking modification of the Magistrate Judge's Order granting the plaintiff's Motion to Compel, is **DENIED**, and the underlying Order (Doc. No. 104) is **AFFIRMED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge