IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JAMES NIXON, III ) | |
| ) | Case No. 3:20-cv-01103 |
| v. ) | Judge Trauger |
| ) | Magistrate Judge Holmes |
| SACMI IMOLA S.C. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff James Nixon III's motion for attorney's fees (Docket No. 107), to which Defendant SACMI IMOLA, S.C. responded in opposition (Docket No. 115) and Plaintiff replied in support (Docket No. 117). For the reasons that follow, Plaintiff's motion (Docket No. 107) is **GRANTED IN PART AND DENIED IN PART** as discussed below.[1]

### I. BACKGROUND

Familiarity with this case is presumed and only those facts and procedural background necessary to explain or provide context to the Court's ruling are recited.[2]

On October 13, 2023, Plaintiff filed a motion to compel pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure.[3] (Docket No. 96.) In that motion, Plaintiff alleged that he did not learn about two alleged modifications to the product at issue in this litigation – the Hopper, a machine that breaks clay down into smaller pieces – until nearly the close of discovery and that Defendant failed to search for or produce responsive documents. (Docket No. 97 at 1–2.) Plaintiff

---

[1] As discussed in more detail below, the Court previously held in an order dated November 17, 2023 that Plaintiff is entitled to reasonable expenses, including attorney's fees, in connection with resolution of Plaintiff's motion to compel. (Docket No. 104 at 27.) The District Judge affirmed that order on December 27, 2023. (Docket No. 119 at 18.)

[2] A more expansive recitation of the facts and procedural background of this litigation is found in the order dated November 17, 2023. (Docket No. 104 at 1–6.)

[3] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

asked the Court to compel Defendant to (1) produce documents in response to two Requests for Production; (2) supplement its document production; (3) identify documents withheld on the basis of privilege or any other ground; (4) bear the cost of translating approximately 10,000 pages of documents produced in Italian; (5) provide a Rule 30(b)(6) witness to testify on certain Rule 30(b)(6) deposition topics; and (6) pay Plaintiff's reasonable expenses incurred in connection with the discovery dispute. (Docket No. 96 at 1–2.) Defendant opposed Plaintiff's motion. (Docket No. 99.)

After considering the parties' filings and holding an in-person hearing on November 6, 2023, the Court granted Plaintiff's motion. (Docket No. 104.) The Court ruled on the five issues presented in the motion to compel as follows:

First, the Court ordered Defendant to produce documents in response to two of Plaintiff's Requests for Production, though the Court narrowed the scope of those requests. The Court found that the requests were relevant but overly broad; that the discovery requested was proportional to the needs of the case; and that Defendant had possession, custody, or control of the requested information despite Defendant's arguments that Italian data privacy law limited its authority and control over its employees' email accounts and prohibited any systematic scanning or copying of those documents. (*Id.* at 8–23). Second, the Court ordered Defendant to make a corporate representative available pursuant to Rule 30(b)(6) to testify on certain topics, and the Court permitted Plaintiff to take additional fact witness depositions. (*Id.* at 23–24.) Third, the Court ordered Defendant to supplement or revise its responses to certain Requests for Production to clarify that it had not withheld any documents on the basis of privilege and so that each request was answered under oath. (*Id.* at 24–25.) Fourth, the Court held that Defendant had no obligation under Rule 34 to bear the costs of translating certain documents that it produced in Italian. (*Id.* at

25–27.) Fifth and finally, the Court ordered the parties to submit further briefing on whether Defendant must pay Plaintiff's reasonable expenses under Rule 37. (*Id.* at 27.) In particular, the Court ordered Plaintiff to "file a motion for award of attorney's fees that it incurred with respect to the Motion to Compel (Docket No. 96), including any pre-filing attempts at resolution." (*Id.* at 28–29.) The Court also stated that it was inclined to find that Defendant's failure to produce documents in response to certain Requests for Production was not substantially justified, but it did not make an affirmative ruling on that question. (*Id.* at 27.) That issue is now before the Court.

In the interim, Defendant filed a motion for review of the order granting Plaintiff's motion to compel (Docket No. 113), as it is entitled to do. Defendant sought the District Judge's review of the undersigned's determination that "that the requested documents are within [Defendant's] possession, custody or control, despite [Defendant's] citations to Italian data privacy laws that prohibit Italian employers, such as [Defendant], from collecting and searching its employees email communications without their consent." (*Id.* at 1.) After considering Defendant's motion and related filings, and conducting a *de novo* review of the issues raised by Defendant, Judge Trauger denied Defendant's motion for review and affirmed the order granting the motion to compel. (Docket No. 119.) Judge Trauger then referred the instant motion for award of attorney fees to the undersigned. (Docket No. 120.)

## II. LAW AND ANALYSIS

As a preliminary matter, the Court will address its authority to rule on the instant motion by order rather than report and recommendation. Magistrate judges generally have authority to enter orders regarding non-dispositive pre-trial motions but must submit report and recommendations for dispositive motions. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72. There is little debate as to whether a magistrate judge can enter an order imposing monetary sanctions on a party

3

under Rule 37. *See Builders Insulation of Tenn., LLC v. S. Energy Sols.*, No. 17-CV-2668- TLP-TMP, 2020 WL 265297, at *3-4 (W.D. Tenn. Jan. 17, 2020) (collection of cases adopting principle that an award of attorneys' fees under Rule 37 is a non-dispositive matter that may be finally decided by a magistrate judge).[4]

If a motion to compel discovery is granted or the discovery is provided after a motion to compel is filed, Rule 37(a)(5)(A) requires the court to award reasonable expenses, including attorney's fees, to the moving party.[5] Defendant argues that Rule 37(a)(5)(A) does not apply because Plaintiff's motion to compel was not "granted." Defendant asserts that Rule 37(A)(5)(C) applies instead because Plaintiff's motion was "granted in part and denied in part."[6]

There is some appeal to Defendant's argument. The Court did not provide Plaintiff with all the relief requested – for example, the Court did not order Defendant to pay costs to translate documents produced in Italian. The Court nevertheless granted Plaintiff's motion with respect to his request to compel Defendant to produce documents in response to certain of his Requests for Production. (Docket No. 104 at 8–23.) Similarly, while the Court narrowed the scope of the

---

[4] It is worth noting that motions for sanctions under Rule 37 differ from motions for sanctions under Rule 11, which the Sixth Circuit consider to be dispositive. *See Bennett v. General Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 997 (6th Cir. 1992).

[5] Rule 37(a)(5)(A) provides, in pertinent part: "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

[6] Rule 37(a)(5)(C) applies if a motion to compel is granted in part and denied in part. Under that provision of the rule, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Requests for Production, the Court nonetheless ordered Defendant to produce responsive documents. For these reasons, the Court finds that Rule 37(a)(5)(A) applies.[7]

There are three exceptions to the mandatory award of attorney's fees under Rule 37(a)(5)(A): (1) the movant filed the motion before conferring in good faith; (2) the opposing party's nondisclosure, response, or objection was "substantially justified"; and (3) other circumstances make an award "unjust." Fed. R. Civ. P. 37(a)(5)(A)(i–iii). Accordingly, the Court must first determine if Defendant's nondisclosure, response, or objection to Plaintiff's discovery requests was "substantially justified" or if other circumstances make an award of expenses "unjust" under Rule 37(a)(5)(A). If the answer is no, the Court must then determine whether the fees requested by Plaintiff are reasonable.

### A. Defendant's Response to Plaintiff's Requests for Production Was Not "Substantially Justified"

"Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Sixth Circuit has held that a party meets the "substantially justified" standard if "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington–Fayette Urban Co. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce*, 487 U.S. at 552)). As noted by the Supreme Court, "the one [connotation] most naturally conveyed by the phrase before us here is

---

[7] Nevertheless, even if Rule 37(a)(5)(C) did apply, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(A)(5)(C). In fact, Rule 37(A)(5)(C) gives the Court "greater discretion in deciding whether to award fees and costs" than does Rule 37(A)(5)(A). *Fed. Machinery & Equip. Co. v. Tousey*, No. 1:21-CV-01422-CEF, 2024 WL 838680, at *2 (N.D. Ohio Feb. 9, 2024) (citing *Galinis v. Branch Cnty.*, No. 1:14-cv-00460, 2015 WL 2201696, at *2–3 (W.D. Mich. May 11, 2015)). Accordingly, for the reasons detailed below, the Court finds in its discretion that awarding expenses for the motion under Rule 37(a)(5)(C) is warranted and apportions those expenses as set forth in greater detail below.

not 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 at 565.

In response to Plaintiff's motion for an award of attorney's fees, Defendant argues that its nondisclosure, response, or objection to Plaintiff's discovery requests was "substantially justified" under Rule 37 because a conflict existed between Defendant's duties under Rules 26 and 24 and its duties under Italian data privacy laws. (Docket No. 115 at 5.) In short, Defendant argues that its failure to gather documents from its employees and produce those documents to Plaintiff was "substantially justified" because "reasonable people" could differ about whether its position was correct.

Specifically, Defendant argues that "Italian law does not permit Defendant – or any other employer – to independently search the electronic devices or emails of its employees" and that the interpretation and application of the referenced Italian data privacy laws is an "unsettled issue." (*Id.* at 6.) Accordingly, Defendant asserts that "reasonable people can differ as to the appropriateness of the contested action" and its decision to not produce documents was "substantially justified." (*Id.* (quoting *Pierce*, 487 U.S. at 565).)

To support this argument, Defendant points to a declaration of Italian attorney Alessandro P. Giorgetti (Docket No. 113-1), which was submitted in support of Defendant's motion for review of the Court's order granting Plaintiff's motion to compel (Docket No. 113) that Judge Trauger ultimately denied (Docket No. 119). The Giorgetti declaration purports to resolve the Court's questions concerning "whether Italian data privacy law recognizes a legal distinction in its data privacy restrictions between personal and business emails or accounts, and whether additional context or information would have enabled the Court to 'confidently interpret' the relevant Italian data privacy laws at issue." (Docket No. 115 at 6.)

6

In her order denying Defendant's motion for review, Judge Trauger thoroughly analyzed the Giorgetti declaration. (Docket No. 119 at 10–14.) Although Judge Trauger found the arguments within the declaration to be persuasive, she concluded that, with respect to the purportedly "unsettled issue" of Italian data privacy law, Defendant "failed to establish that accessing and searching its employees' work emails in order to comply with the Order granting the Motion to Compel would violate Italian law." (*Id.* at 16.) Specifically, Judge Trauger stated, in pertinent part:

> The court is persuaded by Giorgetti's arguments and its own review of the Italian authority presented by the defendant that Italian law provides for the nearly inviolate protection of the privacy and confidentiality of individuals' written and electronic correspondence, regardless of whether it is created in a professional context and contained in an employer's email servers, as [Defendant] argues. That said, however, the little guidance the court has been able to locate about how Italian privacy laws pertain to employers' ability to search and produce employees' emails in response to discovery requests originating from a foreign lawsuit indicates that the issue is more complex than suggested by [Defendant's] bald assertion that accessing employee emails is always illegal (and Giorgetti's assertion that Italian law does not recognize a legal distinction between personal and professional email correspondence).
>
> In short, while it is clear that employees' personal emails are always inaccessible, the issue of an employer's ability to access "non-personal emails that only relate to the job carried out at the workplace" may depend on the policies and practices the employer has implemented and the adequacy of the employer's notices about these practices to its workforce.
>
> * * *
>
> [Defendant], in short, has failed to establish that accessing and searching its employees' work emails in order to comply with the Order granting the Motion to Compel would violate Italian law, even if the court accepts as true the general proposition that all individuals, including employees, have a well recognized and vigorously guarded right to privacy and confidentiality in their correspondence under Italian law.
>
> * * *
>
> Finally, even if the court were to presume that [Defendant] has not adopted any procedures or practices making it clear to employees that work-related email communications are not private, meaning that it likely would be illegal for it to "unilaterally search[] and access[] its employees['] email communications without

7

their consent," [Defendant] has not established that such unilateral action would be the only way for it to comply with the Magistrate Judge's Order. More to the point, it has not presented evidence—aside from the production of the general and clearly inadequate notice posted at its workplace—of its efforts to procure employees' consent to [Defendant's] search of their emails for content related to the matters at issue in this lawsuit or, alternatively, to persuade its employees to conduct their own thorough searches and voluntarily produce such responsive documents, redacting, if necessary, any personal or private information. It would only be after trying and failing to obtain emails through alternative methods that [Defendant] would even potentially be placed in the untenable position of either disregarding an order issued by this court or complying with that order but violating Italian law.

(Docket No. 119 at 14–17.) Consistent with Judge Trauger's reasoning, the Court is not able to find that Defendant's nondisclosure, response, or objection was "substantially justified" under Rule 37(a)(5) because this position was not "justified in substance or in the main." *Pierce*, 487 at 565. For these reasons, the Court will impose an award of reasonable attorney's fees to Plaintiff under Rule 37, as discussed below.[8]

## B.   Only a Fraction of the Fees Requested by Plaintiff Are Reasonable

If the moving party is entitled to fees, that party "bears the burden of documenting his entitlement to the award." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). The moving party has two main obligations: (1) to provide the court with "evidence supporting the hours worked and rates claimed" and (2) to demonstrate that the requested fee award is "reasonable." *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015); *Lance Coal Corp. v. Caudill*, 655 F. App'x 261, 262 (6th Cir. 2016).

When reviewing requests for fees, trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563

---

[8] Candidly, if the Court could find that the awarding of fees is entirely discretionary under the circumstances here, it would be inclined to deny the requested fees altogether as outrageously excessive. *See Thomas v. Bannum Place of Saginaw*, 421 F.Supp.3d 494, 495-99 (E.D. Mich. 2019) (extensive discussion and collection of cases);) *Fed. Machinery & Equip. Co. v. Tousey*, 2024 WL 838680, at *3-6 (same).

8

U.S. 826, 838 (2011) (citation omitted). The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which provides the lodestar figure. *Webb. v. Bd. of Educ. of Dyer Co., Tennessee*, 471 U.S. 234, 242 (1985) (citations omitted). In determining whether a requested hourly rate is reasonable, the court looks to the "prevailing market rate in the relevant community" and considers the skill, experience, and reputation of the attorneys involved in the litigation. *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

After determining the lodestar amount, the court may adjust the fees upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed v. Rhodes*, 179 F.3d 453, 471–72 (6th Cir. 1999)).[9] The court should also exclude from this initial fee calculation hours that were not "reasonably expended." S. Rep. No. 94-1011, at 6 (1976). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Myers v. SSC Westland Operating Co., LLC*, No. 13-14459, 2015 WL 3915797, at *4 (E.D. Mich. June 25, 2015) (citing *Hensley v. Eckerhard*, 461 U.S. 424 (1983)).

---

[9] Courts have identified a number of issues – the "*Johnson* factors" – that a court should look to when considering whether to depart from a lodestar calculation. Those include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 471 n.3 (citation omitted). These factors are naturally blended into the reasonableness analysis. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002).

9

When considering the number of hours reasonably expended on a matter, the court must likewise pay attention to whether cases are overstaffed, that is, whether the hours expended were excessive, redundant, or unnecessary. To assure the reasonableness of the hours expended, attorneys must give the reviewing court sufficient detail to evaluate the fee award. *See Trustees of the Painters Union Deposit Fund v. Interior/Exterior Specialist Co.*, No. 05–70110, 2011 WL 204750 at *4 (E.D. Mich. Jan. 21, 2011) ("If the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Plaintiff requests fees in the following amounts:

| **Biller** | **Title** | **Hourly Rate** | **Hours** | **Fee** |
|---|---|---|---|---|
| Daniel Hull | Member | $500 | Phase 1: 29.5<br>Phase 2: 54.9<br>Phase 3: 3.1 | $43,750.00 |
| Joe Leniski, Jr. | Member | $500 | 2.5 | $1,250.00 |
| Trina Scott | Paralegal | $100 | 6.0 | $600.00[10] |
| **Total** | | | **96.6** | **$45,600.00**[11] |

(Docket No. 107-1 at ¶ 6.) Plaintiff submitted a declaration of attorney Daniel Hull explaining the process of compiling the relevant billing information. (Docket No. 107-1.) The declaration

---

[10] In his declaration, attorney Daniel Hull calculates the total amount of fees billed by paralegal Trina Scott as $3,000.00, which would equate to a rate of $500.00 per hour. The Court assumes this amount was an error and has revised it to $600.00 total, which would equate to a rate of $100.00 per hour.

[11] Hull calculates the total amount of fees billed as $48,000.00, which appears to be inaccurate based on the miscalculation of paralegal Trina Scott's hourly rate as detailed *supra* n.6. The Court has revised the total amount sought from $48,000.00 to $45,600.00.

includes information regarding the three "phases" of Hull's legal work for which Plaintiff seeks compensation:

| Phase | Hours Billed | Time Period | Description of Work |
|---|---|---|---|
| 1 | 29.5 | Sept. 11, 2023 to Oct. 5, 2023 | <ul><li>Defining discovery issue</li><li>Attempting to resolve dispute without Court intervention</li><li>Working on joint statement of discovery dispute</li><li>Drafting and filing Plaintiff's Motion to Amend the Scheduling Order</li></ul> |
| 2 | 54.9 | Oct. 6, 2023 to Nov. 6, 2023 | <ul><li>Briefing Motion to Compel</li><li>Preparing for oral argument</li><li>Participating in oral argument</li></ul> |
| 3 | 3.1[12] | Nov. 7, 2023 to Nov. 17, 2023 | <ul><li>Attempting to resolve dispute</li></ul> |

(*Id.* at ¶ 9.) The declaration also states that attorney Joe Leniski, Jr. billed 2.5 hours for "preparation for, and attendance at, oral argument on November 6, 2023" and that paralegal Trina Scott billed 6.0 hours for "tasks customarily undertaken by a paralegal in Nashville, Tennessee." (*Id.* at ¶¶ 10–11.)

Plaintiff did not provide a detailed log of time entries, but instead provided in Hull's declaration the narrative descriptions for blocks of billing time set forth above. In the motion, Plaintiff states that he provided these summaries rather than complete billing details "to avoid waiver of a privilege, or any other procedural or substantive right," but is "ready to provide complete billing details, for *in camera* inspection" if requested. (Docket No. 107 at 2 n.1.)

---

[12] Hull states that he billed 24.4 hours during Phase 3 (Docket No. 107-1 at ¶ 8), but he later details only 3.1 hours of work (*id.* at ¶ 9(c)). The Court assumes that he billed only 3.1 hours during Phase 3 because such an assumption results in a total of 87.5 hours (rather than 108.8 hours).

11

Hull's declaration maintains that the amount of fees sought is "fair and reasonable," "consistent with rates customarily charged by attorneys with similar experience undertaking similar work," and "consistent with amounts previously approved by this Court in comparable litigation." (Docket No. 107-1 at ¶ 14.) The Hull declaration is accompanied by a resume for his law firm. (Docket No. 107-2.)

In its response, Defendant argues that the fees requested by Plaintiff are unreasonable for several reasons. (Docket No. 115 at 9–10.) First, Defendant argues that many of the requested hours are for "unrelated tasks," including a separate motion to amend the scheduling order and separate discovery dispute statement. (*Id.* at 9.) Next, Defendant asserts that Plaintiff seeks compensation for more hours than his attorneys should have reasonably spent on the motion to compel, including "26.1 hours to draft a 2-page motion and a 13-page memorandum of law" and "21.9 hours briefing a 5-page reply." (*Id.*) Finally, Defendant contends that Plaintiff provided insufficient information regarding its time entries and failed to meet its burden to support its request for fees with adequate details. (*Id.* at 10.)

Based on the information provided, the Court finds that the hours billed are clearly excessive and patently unreasonable.[13] In Phase 1, Hull declares that he spent 1.9 hours defining

---

[13] As the moving party, Plaintiff bears the burden of supporting the requested attorney's fees and demonstrating that the amount requested is reasonable. The Court acknowledges that submission of attorneys' time by summary of tasks with hours spent might technically comply with Local Rule 54.01(c), which refers to "detail [of] the number of hours spent on each aspect of the case." The Court will not expend additional judicial resources with an *in camera* inspection of billing records, which could have – and routinely are – submitted in support of the attorney's fee request. Plaintiff could certainly have filed redacted time records had he thought such records were necessary or appropriate to support his requested attorney's fees. Plaintiff – through his counsel – elected instead to rely on the general, broad narratives of services and blocks of time described in the motion and accompanying filings. Accordingly, that is the what the Court will rely on in considering Plaintiff's entitlement to fees. That said, the Court cannot conceive of any more details that Plaintiff's counsel might provide that would justify the amount of time spent by Hull on the matters described, which simply bolsters the Court's determination not to permit after-the-fact

the scope of the discovery issue and motion to compel; 2.1 hours researching appropriate actions; 2.1 hours meeting and conferring with Defendant's counsel; 11.1 hours preparing the joint statement of discovery dispute[14]; 10.6 hours preparing a motion to amend the scheduling order; and 1.7 hours attending a telephonic conference with Judge Trauger. The Court finds that only some of this billed time was incurred with respect to the motion to compel. The time spent on a motion to amend the scheduling order and at least some of the time spent on researching appropriate actions, which included a reference to the motion to amend the scheduling order, are not compensable under Rule 37(a)(5)(A). Further, the Court finds that Plaintiff has failed to demonstrate that the time spent preparing the statement of discovery dispute is reasonable.

In Phase 2, Hull spent 26.1 hours preparing the motion to compel; 21.9 hours preparing a reply to the motion to compel; and 6.9 hours preparing for and attending the hearing on the motion to compel. Although the issues in the motion to compel were more complex than a run-of-the-mill discovery dispute, the amount of time spent drafting a 2-page motion, 13-page memorandum of law, and 5-page reply is far beyond the range of reasonableness. Even recognizing that the dispute involved a unique issue of Italian law, the Court nevertheless finds that, as a whole, the exorbitant

---

submission of actual billing records. Further, for some of the time spent, such as Leniski's time and that of paralegal Scott, the Court questions how the billing records could possibly implicate privilege or some other vaguely referenced "procedural or substantive right," which is the ostensible basis upon which the billing records were not provided.

[14] Plaintiff contends that the time spent was due to a disagreement on what information Plaintiff should, or was entitled to, include in his portion of the joint discovery dispute statement, which necessitated "as least four drafts of the joint statement." (Docket No. 107-1 at 5.) The Court finds little merit in this purported explanation. A joint discovery dispute statement is not joint because the parties agree on each other's content. It is joint simply because each party states their respective position. For the parties to have spent hours and hours in a disagreement over what and how the other side would state its position is unwarranted, but, unfortunately, perhaps indicative of the parties' unwillingness or inability to cooperate in discharging their respective discovery obligations in this case.

amount of time purportedly spent on these tasks is patently unreasonable, particularly given the prior research into the issues, the time previously spent on a joint discovery dispute statement, and when considered with Hull's experience and the higher hourly rate he charges.[15]

In Phase 3, Hull spent 1.1 hours conferring with Defendant's counsel regarding its discovery obligations and 2 hours meeting in person with Defendant's counsel. These time entries came after the hearing but before the Court issued its order resolving the motion. Accordingly, none of these time entries were "incurred with respect to the Motion to Compel (Docket No. 96), including any pre-filing attempts at resolution." (Docket No. 104 at 28–29.) The Court appreciates Plaintiff's attempts to resolve the discovery dispute even after the hearing, but it will not impose payment of those fees on Defendant.

Additionally, the Court finds that the 2.5 hours billed by attorney Leniski to prepare for and attend the discovery hearing, although, perhaps, not unreasonable standing alone, are unreasonably duplicative. Given the considerable amount of time spent by Hull in preparation for the hearing, the Court finds that the additional time spent by Leniski was of little additional value and is therefore non-compensable as a discovery sanction.

Further, in the absence of any description of the 6.0 hours billed by paralegal Scott, the Court will not reallocate payment to Defendant. The description of "tasks customarily undertaken by a paralegal" is plainly insufficient. The Court could surmise the kind of tasks that are

---

[15] Because more experienced attorneys charge higher rates for their services, they are expected to perform legal work in an efficient manner. *See, e.g.*, *Segovia v. Montgomery Cnty., Tenn.*, 593 F. App'x 488, 492 (6th Cir. 2014) (fee award properly reduced for excessive time billed by experienced attorney); *Knop v. Johnson*, 712 F.Supp. 571, 578 (W.D. Mich. 1989) (because more experienced attorneys charge higher rates for their services, they are expected to perform legal work in an expedited manner) (internal citations omitted); *Kinder v. Northwestern Bank*, No. 1:10–cv–405, 2012 WL 2886688, at *5 (W.D. Mich. June 5, 2012) ("One reason that experienced attorneys can command high hourly billing rate is the attorney's presumed efficiency in handling familiar legal issues.")

14

"customarily undertaken by a paralegal," but speculation is inappropriate when imposing payment of one party's fees to another. Further, the Court is well aware that different law firms utilize paralegals differently, including sometimes to do work that would more properly be characterized as clerical or other non-compensable work when reallocating fees. For instance, if the entire 6 hours was spent on ECF filings or preparing hearing notebooks, that would be time that could be non-compensable for a variety of reasons. Accordingly, the Court finds that Plaintiff failed to demonstrate the reasonableness of the paralegal time and will disallow the amount sought for Scott altogether.

Overall, Plaintiff's request of $45,600[16] in attorney's fees for a single discovery dispute shocks the conscience of the Court. Plaintiff seeks in excess of 80 hours or more than two standard work weeks' worth of time for pursuing a discovery motion. As a sister court noted, in consideration of a similarly exorbitant request for attorney's fees under Rule 37(a)(5)(A), Plato warned: "The excessive increase of anything causes a reaction in the opposite direction." *Martin v. Linco Eatery, Inc.*, Case No. 2:17-cv-11634, 2018 WL 4658996, at *2 (E.D. Mich. Sept. 28, 2018). The Court finds that 20 hours is a reasonable, compensable amount of time spent preparing for and attending the various discovery conferences and hearings. *See Auto Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005) (recognizing "the propriety of an across the board reduction based on excessive or duplicative hours").

Finally, the Court finds the attorney rates charged to be approaching the high end of rates typically approved in this Court. *See, e.g., Pineda Transportation, LLC v. FleetOne Factoring, LLC*, Case No. 3:18-cv-00089, 2020 WL 529231, at *5 (M.D. Tenn. Feb. 3, 2020) (finding blended

---

[16] As noted above, Plaintiff's request, as filed, is for $48,000 (Docket No. 107-1 at 3) because of miscalculation of paralegal time. That Plaintiff would request nearly $50,000 in attorney's fees is even more audacious.

rate of $463.50 for shareholder with 38 years of experience at the time at high end of approved rates). Here, the Court finds that a reasonable hourly rate is $400.

The purpose of imposing sanctions is to "assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." *Jackson v. Nissan Motor Corp.*, No. 88-6132, 1989 WL 128639, at *3 (6th Cir. Oct. 30, 1989) (quotations and citation omitted). Based on an hourly rate of $400 and compensable time of 20 hours, the Court finds that a reasonable attorney's fee amount in connection with the motion to compel in this case is $8,000.00. Imposition of attorney's fees in this amount against Defendant is a more than fair and proportional sanction for the conduct that resulted in Plaintiff's successful motion to compel.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for award of attorney fees in connection with the motion to compel (Docket No. 107) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is awarded $8,000.00 in attorney's fees and costs as discovery sanctions, payable by Defendant within 28 days of the date of entry of this Order.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge